IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FIFE M. WHITESIDE, *Trustee in*
*Bankruptcy*,

    Plaintiff,

vs.

GEICO INDEMNITY COMPANY,

    Defendant.

CASE NO. 4:16-CV-313 (CDL)

O R D E R

This is a bad faith failure to settle tort case which the parties confusingly treat as a breach of contract coverage case. Simply put, Defendant GEICO Indemnity Company had an opportunity to settle a liability claim against its insured within its insured's policy limits but failed to do so. When it made the decision not to accept the policy limits demand, no coverage dispute existed. Subsequently, a judgment was entered against its insured in excess of the policy limits. Because the insured failed to notify GEICO that she had been served with the lawsuit and a default judgment was entered against her, GEICO arguably has no contractual liability to pay the judgment under its policy. The issue presented by the parties' motions for summary judgment is whether either party is entitled to judgment as a matter of law on Plaintiff's bad faith failure to settle tort claim under these circumstances. Because genuine fact disputes

exist to be tried, the parties' motions for summary judgment (ECF Nos. 36 and 37) are denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

On February 26, 2012, Karen Griffis let Bonnie Winslett borrow her vehicle, which was insured by GEICO Indemnity Company.[1] *See generally* Def.'s Mot. for Summ. J. Ex. A, Ga. Family Auto. Ins. Policy, ECF No. 36-3 [hereinafter Policy]. While Winslett was driving the vehicle, she struck Terry Guthrie

---

[1] Griffis later denied allowing Winslett to borrow the vehicle and argued that Winslett had stolen it, but GEICO informed Griffis that it would be difficult to deny coverage on this basis because Griffis delayed in reporting the alleged theft and because Griffis was Winslett's friend and was visiting Winslett's home when Winslett borrowed the vehicle.

as he rode his bicycle.  Guthrie went to the emergency room because of his injuries, and Winslett went to jail because she did not have a valid driver's license.

When Winslett was released from jail, she returned to the apartment complex on 25th Street where she had been staying for free in an unrentable apartment.  An unidentified lady gave Winslett a March 5, 2012 letter from GEICO.  The letter stated that GEICO determined, based on its investigation, that GEICO was "responsible for the accident."  Pl.'s Mot. for Summ. J. Ex. P4, Letter from M. Herndon to B. Winslett (Mar. 5, 2012), ECF No. 37-6.  GEICO stated that it would handle Guthrie's claim for injuries directly with Guthrie's attorney.  *Id.*  The letter asked Winslett to contact GEICO to provide a statement about the accident details.  *Id.*  Winslett was "pretty messed up" when she got the letter, and she concluded that it meant that GEICO had taken care of everything and that she did not need to do anything else.  Winslett Dep. 48:11-21, ECF No. 35.  GEICO assumed that Winslett received the March 5 letter because it was not returned to GEICO.

GEICO sent Winslett a letter dated May 2, 2012 stating that Guthrie's claim had not yet been settled but that GEICO would notify Winslett once the claim was resolved.  Griffis was copied on the letter.  At some point, Winslett stopped staying at the apartment complex on 25th Street, and the May 2 letter was

returned to GEICO as undeliverable. Winslett did not have a telephone, so GEICO could not call her.

On May 15, 2012, Guthrie's lawyer, Austin Gower with the firm of Charles A. Gower, P.C., sent a demand letter to GEICO asserting that Winslett was negligent in causing Guthrie's injuries and demanding the policy's bodily injury liability limit of $30,000. The demand letter contained medical records showing one emergency room visit and itemizing $9,908.35 in medical bills. The medical records showed that Guthrie received Neosporin for abrasions, that he was prescribed Lortab and Motrin, and that he was released the same day in stable condition. Nearly half of the medical bills were for diagnostic tests that revealed no acute findings.

The demand letter stated that Guthrie suffered "a contusion to his right hip and chest," that he had been unable to get recommended follow-up treatment because he did not have health insurance, and that he continued to suffer pain due to his injuries.[2] Pl.'s Mot. for Summ. J. Ex. P8, Letter from A. Gower

---

[2] Plaintiff now argues that Guthrie's prior neck and back injuries were exacerbated because of the 2012 wreck and that he later needed surgery to treat these injuries, but neither this assertion nor any documentation to support it was included with the demand letter. Guthrie's claim for these previous injuries was with GEICO in 2010, and GEICO authorized its claims examiner to determine whether there was information in the 2010 file that would apply to Guthrie's 2012 claim. GEICO did not point to evidence in its claims activity log that its adjuster did review the 2010 claim file, though there is evidence that she asked Guthrie's attorney for a recorded statement

to M. Herndon 2 (May 15, 2012), ECF No. 37-10. The demand letter did not contain a claim for lost wages. The demand letter stated that the demand would be withdrawn at 5:00 p.m. on June 12, 2012.

Melissa Herndon, a GEICO claims examiner, reviewed Guthrie's demand. She sent Winslett a copy of the demand letter, although it was returned as undeliverable. Based on Herndon's review of the documentation GEICO received from Austin Gower, Herndon and her supervisor determined that the value range for Guthrie's claim was between $12,409.00 and $15,909.00. By letter dated May 23, 2012, Herndon offered Guthrie $12,409.00 to settle his claim against Winslett, and she asked Austin Gower to discuss the offer with Guthrie. Herndon also spoke with Austin Gower that day. Austin Gower did not recall the conversation but believes he would have told Herndon that the counteroffer was too low and that he would file a lawsuit against Winslett on Guthrie's behalf if GEICO did not pay the policy limits.

Guthrie filed suit against Winslett on May 29, 2012 and served Winslett on May 30, 2012 at the apartment complex on 25th Street. Winslett asked the deputy who served her with the papers for help, and he suggested that she contact the attorney

---

from Guthrie. Pl.'s Mot. for Summ. J. Ex. P3, Letter from M. Herndon to C. Gower (Mar. 2, 2012), ECF No. 37-5.

listed on the Complaint. Winslett called the Gower firm and spoke with a paralegal named Jowanda Sparks about what she should do. Sparks told Winslett to get in touch with the insurance company. Winslett also spoke with a social worker at the homeless task force about what to do with the suit papers, and the social worker told Winslett to get in touch with the insurance company. Winslett did not contact GEICO. Instead, she said, "The hell with this shit" and ripped up the papers. Winslett Dep. 79:8-19. Winslett did not know how GEICO would receive notice of the suit if she did not tell GEICO about it.

After Winslett was served on May 30, 2012, no one notified GEICO of the lawsuit: not Winslett, not Griffis, not Guthrie, not anyone at the Gower firm. On June 1, 2012, Herndon called the Gower firm to follow up on her settlement offer. No one was available to take her call, so she left a voicemail for Austin Gower asking if there was a response to GEICO's offer. That telephone call was not returned. Herndon called the Gower firm to follow up again on June 27, 2012. She left another voicemail for Austin Gower. That telephone call was likewise not returned. Herndon sent a letter to the Gower firm as "a follow up attempt to settle" Guthrie's claim against Winslett. Pl.'s Mot. for Summ. J. Ex. P12, Letter from M. Herndon to C. Gower (Jun. 27, 2012). No one from the Gower firm responded. Herndon called the Gower firm to follow up again on July 17, 2012. She

was again told that neither an attorney nor a paralegal was available, so she left a message for the paralegal, Sparks. No one from the Gower firm returned that telephone call.

On August 1, 2012, Superior Court Judge Gil McBride held a short hearing on Guthrie's motion for default judgment against Winslett. He entered a default judgment against Winslett in the amount of $2,916,204.00. On August 8, 2012, Austin Gower informed GEICO via letter that a default judgment had been entered against Winslett, and he demanded payment.

On August 20, 2012, GEICO determined that it should send Winslett a reservation of rights letter stating that GEICO may determine that Winslett had no coverage because GEICO was not notified of Guthrie's lawsuit. On August 22, 2012, GEICO sent Winslett a reservation of rights letter at the 25th Street apartment complex. The letter stated that GEICO "does not waive any of its rights or admit any obligations under the policy" and quoted the policy's notice provision. Pl.'s Mot. for Summ. J. Ex. P14, Letter from E. Holmes to B. Winslett (August 22, 2012), ECF No. 37-16. GEICO then hired attorney Ted Theus to represent Winslett pursuant to a reservation of rights. Pl.'s Mot. for Summ. J. Ex. P16, Fax from T. Theus to B. Avery (Aug. 24, 2012), ECF No. 37-18. Theus sent Winslett a letter at the 25th Street apartment complex. The letter stated that GEICO retained Theus to represent Winslett pursuant to a reservation of rights.

There is no evidence that Winslett received the letter from GEICO or the letter from Theus.

When Theus did not hear from Winslett, he went to her last known address (the 25th Street apartment complex) and tried to find her. Theus Aff. ¶ 3, ECF No. 41. Theus was told that Winslett no longer lived at the apartment but that he might find her through several homeless outreach ministries; Theus spoke with individuals at several ministries and asked them to have Winslett contact him if they saw her. *Id.* ¶4. Winslett did contact Theus on September 20, 2012, and told him that she was staying with her boyfriend in a trailer park in Alabama. *Id.* ¶ 6. Theus personally met with Winslett on September 23, 2012. *Id.* He told Winslett that GEICO would represent her under a reservation of rights and that a "coverage issue was presented" because GEICO did not receive notice of the lawsuit against her until after a default judgment had been entered. *Id.* Theus obtained an affidavit from Winslett regarding the collision and sent it to GEICO the next day.

After Theus met with Winslett, he filed a motion on her behalf to set aside the default. The motion to set aside was denied, and that decision was later affirmed by the Georgia Court of Appeals. Guthrie filed an involuntary bankruptcy petition as a creditor of Winslett and brought a claim against GEICO for bad faith. GEICO hired a lawyer to represent Winslett

in the bankruptcy action, and the lawyer filed a motion to dismiss the involuntary bankruptcy. That motion was denied, and Winslett was adjudicated a Chapter 7 Debtor. Fife Whiteside, the Trustee in Bankruptcy ("Trustee"), brought this action on behalf of the Winslett bankruptcy estate to recover damages caused by GEICO's failure to settle Guthrie's claim.

## DISCUSSION

The Court must resolve two issues in deciding the parties' motions for summary judgment: (1) does a genuine fact dispute exist on whether GEICO failed to act as a reasonable insurer would act when it failed to accept Guthrie's demand for the $30,000 policy limits; and (2) if it does, does a genuine fact dispute exist on whether Winslett suffered damages proximately caused by GEICO's failure to settle the claim. The Court addresses each issue in turn. There is no dispute that Georgia law applies in this diversity case. *See, e.g., Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* [*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] doctrine, federal courts sitting in diversity apply state substantive law[.]").

## I. Is There a Genuine Fact Dispute on Whether GEICO Breached its Duty to its Insured?

An insurance company may be liable for damages to its insured "based on the insurer's bad faith or negligent refusal

to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003). "A claim for bad-faith failure to settle sounds in tort and involves, at least in part, a claim that the insurer's conduct exposed the insured's personal property to loss." *S. Gen. Ins. Co. v. Ross*, 489 S.E.2d 53, 57-58 (Ga. Ct. App. 1997). An "insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the insurance contract." *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1545-47 (11th Cir. 1991). As the Court previously observed, "[a]n insurer acts in bad faith if it acts unreasonably in responding (or failing to respond) to a settlement offer" and "is negligent in refusing to settle a claim if an ordinarily prudent insurer would consider it an unreasonable risk to try the case instead of settling it." *Dickerson v. Am. Nat. Prop. & Cas. Co.*, No. 3:07-CV-111 (CDL), 2009 WL 1035131, at *6 (M.D. Ga. Apr. 16, 2009).[3] In other

---

[3] GEICO argues that Georgia courts have not recognized a negligent failure to settle claim based on an insurer's failure to handle a claim as an ordinarily prudent insurer would. But the Georgia Supreme Court, in affirming the denial of a directed verdict against an insurer for refusal to settle a personal injury action, did state that the insurer's conduct must be "[j]udged by the standard of the ordinarily prudent insurer" and that "the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk." *Brightman*,

words, an insurance company "may be liable for damages for failing to settle for the policy limits 'if, but only if, such ordinarily prudent insurer would consider that choosing to try the case [rather than accept an offer to settle within the policy limits] would be taking an unreasonable risk [that the insured would be subjected to a judgment in excess of the policy limits].'" *Baker v. Huff*, 747 S.E.2d 1, 6 (Ga. Ct. App. 2013) (alterations in original) (quoting *U.S. Fid. & Guar. Co. v. Evans*, 156 S.E.2d 809, 811, *aff'd*, 158 S.E.2d 243 (1967)).

The determination of whether an insurer acted reasonably in response to a time-limited settlement demand "require[s] consideration of all the relevant circumstances including the insurer's knowledge of facts relevant to liability and damages on the claim; the insurer's diligence in conducting a reasonable investigation to discover the relevant facts; and the terms of the settlement offer and any response by the insurer." *Baker*, 747 S.E.2d at 6. These matters are typically disputed. To find that an insurer acted unreasonably *as a matter of law*, as the Trustee argues GEICO did, the evidence would have to be such that no reasonable juror could conclude that an ordinarily prudent insurer would have declined the offer. On the other

---

580 S.E.2d at 521; *id.* at 521-22 (finding that the Georgia Supreme Court could not resolve, as a matter of law, that the insurer acted "reasonably and like the ordinarily prudent insurer in declining to tender its policy limits"). The Court applies the standard set forth in *Brightman*.

hand, to find that an insurer acted reasonably *as a matter of law*, as GEICO argues it did, the evidence would have to be such that no reasonable juror could conclude that the insurer acted unreasonably in responding to the settlement demand.

The Court finds that a jury question exists on this issue. A reasonable jury could conclude that GEICO acted reasonably in responding to Guthrie's settlement offer of $30,000. Based on the information GEICO received with Guthrie's settlement demand, a reasonable insurer could determine that his claim was worth less than $30,000 because Guthrie's diagnostic tests revealed no acute findings; his hospital treatment of only Neosporin, Lortab, and Motrin did not suggest that he suffered a serious injury; Guthrie's medical bills were slightly less than one third of the policy limits; Guthrie did not assert a claim for lost wages; and Guthrie's attorney did not respond to GEICO's request for a recorded statement from Guthrie. But there is also sufficient evidence from which a reasonable jury could conclude that GEICO did not act reasonably in its response because Guthrie's medical bills totaled nearly $10,000 and Guthrie's lawyer told GEICO that Guthrie continued to experience pain and needed follow-up medical treatment. A jury needs to resolve this fact dispute. Accordingly, summary judgment is not appropriate on this ground.

## II. Is There a Genuine Fact Dispute on Whether GEICO's Alleged Breach of Duty Proximately Caused Damages to Winslett?

GEICO argues that even if a jury could conclude that it acted negligently or in bad faith in failing to settle Guthrie's claim, the Trustee cannot, as a matter of law, prevail because Winslett did not give GEICO notice of Guthrie's lawsuit against her and did not cooperate with GEICO with regard to Guthrie's lawsuit. It is true that in general, if an insured is contractually required to provide notice of a loss or a lawsuit and fails to do so, then there is no coverage under the policy. *See, e.g., OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 673 (11th Cir. 2012) (per curiam); *Burkett v. Liberty Mut. Fire Ins. Co.*, 629 S.E.2d 558, 560 (Ga. Ct. App. 2006); *Berryhill v. State Farm Fire & Cas. Co.*, 329 S.E.2d 189, 190 (Ga. Ct. App. 1985). And, an insurance company cannot be considered to have acted negligently or in bad faith in failing to settle a claim if it had reasonable grounds to contest the claim—such as if there was undisputedly no coverage for the claim *at the time the settlement demand was made*.[4] But

---

[4] The Court reviewed the "bad faith" cases GEICO cited on this point and notes that they are all O.C.G.A. § 33-4-6 actions for bad faith failure to pay a covered insurance claim according to the terms of the policy, not claims against an insurance company for breach of its duty to act reasonably in deciding whether to accept or decline a policy limits settlement demand. *See, e.g., Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 609 F. App'x 578, 585 (11th Cir. 2015) (per curiam) (affirming grant of summary judgment on insured's O.C.G.A. § 33-4-6 bad faith claim because a policy exclusion barred coverage).

here, there was no coverage dispute at the time GEICO rejected Guthrie's pre-suit policy limits demand. It is undisputed that as of that time GEICO had received timely notice of the claim and was well aware of the policy limits demand.

Nevertheless, GEICO contends that Winslett's failure to notify GEICO of a lawsuit that was filed *after* GEICO rejected Guthrie's policy limits settlement demand bars her claim based on GEICO's handling of that settlement demand. GEICO relies heavily on *OneBeacon*, *Burkett*, and *Berryhill*. All three of those cases involved breach of contract claims arising from an insurance company's refusal to pay a claim under the relevant policy; none involved a claim sounding in tort arising from an insurance company's failure to accept a liability policy limits settlement demand.[5] In all three cases, the key question was "whether an insurance company, absent any notice of a lawsuit

---

[5] In *OneBeacon,* the insured sought coverage for a tort claim against it but did not notify the insurer of the suit (or of the loss) until nearly two years after the suit was filed. The delay was not justified, so the insured's failure to comply with the notice condition precedent precluded coverage. *OneBeacon*, 477 F. App'x at 672. In *Burkett*, the passenger injured in a wreck did not notify uninsured motorist carriers of the wreck or of a declaratory judgment action regarding coverage under the liability policy; the insurer did not receive notice of the declaratory judgment action until several months after a court determined that both of the drivers in the wreck were uninsured. The court concluded that insured's failure to comply with the notice condition precedent precluded coverage since the insured's delay was unreasonable. *Burkett*, 629 S.E.2d at 560. Finally, in *Berryhill*, the person who was injured by the insured brought suit alleging that the insurer was obligated to pay the judgment incurred by its insured even though the insurer was not notified of the suit until after a default judgment was entered. The court found that the failure to comply with the policy's notice of suit provision barred coverage. *Berryhill*, 329 S.E.2d at 191.

against its insured either from the insured or from any other person, can be held liable for a judgment obtained against the insured" when the applicable policies required notice of a suit and stated that such notice was a condition precedent to coverage. *Berryhill*, 329 S.E.2d at 190. The critical distinction between those cases and this action is that nothing in *Berryhill*, *Burkett*, or *OneBeacon* suggests that any of the insurers declined an opportunity to settle the injured person's claims within policy limits before the lawsuit was filed.[6] *Cf. Delancy*, 947 F.2d at 1545–46 (distinguishing an action for an insurer's failure to pay a covered claim from a tort claim based on an insurer's duty not to injure the insured by negligently or in bad faith refusing to settle a claim).

GEICO did not cite, and the Court did not find, a failure to settle case where coverage existed at the time a policy limits settlement demand was made and rejected but where the insured subsequently failed to provide the insurer with notice of a lawsuit that was filed *after* the insurer unreasonably rejected the settlement offer. The Court finds that the

---

[6] GEICO's argument that O.C.G.A. § 33-7-15 applies to foreclose coverage under the circumstances of this case is likewise misplaced. That statue simply requires insurance contracts to contain a notice of suit provision and states that if an insured fails to comply with that required provision and the insurer is prejudiced by the failure, then the insurer is relieved of its obligation to pay a judgment on behalf of the insured. The statute does not address an insurer's duty to act reasonably in deciding whether to accept or reject a policy limits settlement demand.

subsequent failure of an insured to comply with the policy conditions does not automatically excuse an insurer's breach of its independent duty to act reasonably and in good faith in evaluating a liability policy limits demand that is made prior to the insured's alleged noncompliance with policy conditions.

Here, when Guthrie made a policy limits settlement demand to GEICO, there was no coverage dispute; GEICO acknowledged that it was responsible for the accident and told Winslett that it would handle Guthrie's claim for injuries directly with his attorney. Therefore, GEICO had a duty *at that time and under those circumstances* to act reasonably in responding to Guthrie's settlement demand. And, if it breached that duty, then GEICO can be held liable in tort for any damages that were proximately caused by the breach. *See Delancy*, 947 F.2d at 1545–47 ("[T]he insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the insurance contract.").

Winslett's failure to notify GEICO of Guthrie's lawsuit, however, may be relevant to whether GEICO's breach proximately caused her damages, and if so, the amount. Typically, the amount of damages in a failure to settle case is the amount of the excess verdict plus other damages that were *proximately caused* by the entry of a judgment on the excess verdict. *McCall*

*v. Allstate Ins. Co.*, 310 S.E.2d 513, 514–15 (Ga. 1984); *accord*
*Cotton States Mut. Ins. Co. v. Brightman*, 568 S.E.2d 498, 502
(Ga. Ct. App. 2002) (noting that damages in an excess verdict
are typically "the amount by which the judgment exceeds policy
coverage"), *aff'd*, 580 S.E.2d 519 (Ga. 2003).  But this is not
the typical case.  Here Winslett's failure to notify GEICO of
Guthrie's lawsuit before the default judgment denied GEICO the
opportunity to "defend the suit, cross-examine the witnesses,
and present evidence on its insured's liability and the damages
incurred." *Champion v. S. Gen. Ins. Co.*, 401 S.E.2d 36, 39 (Ga.
Ct. App. 1990).[7]  A reasonable juror could conclude that the
excess judgment was the result of Winslett's failure to provide
GEICO with notice of Guthrie's lawsuit and that a judgment
against Winslett would have been less than $2.9 million had some
defense been made on her behalf to avoid the default judgment.
The Court thus finds that a fact question exists on the amount
of damages that were proximately caused by GEICO's failure to

---

[7] In *Champion*, the insurer did not learn of the injured party's lawsuit
against the insured until after a default judgment was entered against
the insured.  The insurer argued that it was prejudiced as a matter of
law based on the insured's failure to provide notice of suit as
required under the policy and was thus not liable under the policy
pursuant to O.C.G.A. § 33-7-15(b), which states that if an insured
does not comply with a notice of suit provision in the policy and the
insurer is prejudiced as a result, then the insurer has no obligation
to pay a judgment on behalf of the insured.  The Georgia Court of
Appeals found a fact question on whether the prejudice the insurer
experienced as a result of the insured's failure to provide the notice
was eliminated when the injured party offered to open the default
judgment. *Champion*, 401 S.E.2d at 39.

settle Guthrie's claim for the policy limits when it had an opportunity to do so.

The Court recognizes that the Trustee maintains that Winslett was not required to provide GEICO with notice of Guthrie's suit and that GEICO waived any right it had to receive notice from Winslett.[8] If that were the case, then Winslett's failure to notify GEICO could not be an intervening cause of any damages she suffered. The Court finds this argument unpersuasive.

The policy states that if a "claim or suit is brought against an insured"—which includes Winslett as a permissive driver—"you" (defined as the named policyholder) are required to send GEICO "a copy of every summons or other process relating to the coverage under this policy" unless GEICO receives the summons or other process by another means. Policy 6, ECF No. 36-3 at 9. The policy further states that if "you" (the policyholder) "fail to comply with this provision, it will constitute a breach of the insurance contract and if prejudicial to us, shall relieve us of our obligation to defend you [the

---

[8] Winslett also argues that GEICO is estopped from denying coverage based on its conduct in hiring an attorney to represent her after it was notified of the default. Again, this is not a breach of contract case based on a denial of coverage. Moreover, the Court is not convinced that estoppel would apply in a case like this, where the insured received actual notice that her attorney was hired to represent her under a reservation of rights *before* the lawyer took any action in her defense and where the insured did not object to the defense under a reservation of rights.

policyholder] and any other insureds under this policy and of any liability to pay any judgment or other sum on [the policyholder's] or any other insureds behalf." *Id.* The policy also requires that the "insured" will "cooperate and assist" GEICO in "the investigation of the occurrence," "making settlements," "the conduct of suits," and "securing and giving evidence" if such cooperation and assistance is requested. *Id.*

The Trustee argues that these provisions clearly indicate that GEICO waived its right to receive notice of the suit from an insured who is not a policyholder and that since Winslett was not expressly required or requested to provide GEICO with notice of the suit, her failure to do so cannot be held against her. An insurance policy's terms must be construed as "what a reasonable person in the position of the insured would understand the words to mean." *King-Morrow v. Am. Family Ins. Co.*, 780 S.E.2d 451, 452 (Ga. Ct. App. 2015). The Trustee argues that this case is indistinguishable from *King-Morrow*. In *King-Morrow*, a notice provision in an insurance policy required "you" (the policyholder) to notify the insurance company if "you" (the policyholder) had an *accident or loss*. The Georgia Court of Appeals concluded that the notice provision was susceptible to two reasonable constructions: a reasonable person could understand that it (1) only applied to policy holders or (2) implicitly applied to any person claiming coverage under the

policy. The Georgia Court of Appeals held that since the insurance company did not explicitly require *anyone* *claiming* *coverage* to notify it of an accident, a permissive driver could reasonably conclude that the notice provision did not apply to her. *Id.* at 454.

The notice of suit provision in this case is different than the one in *King-Morrow*. The policy here does require the policyholder (and no one else) to send GEICO a copy of the summons and complaint *unless* it is "otherwise received" by GEICO. Policy 6, ECF No. 36-3 at 9. But it also explicitly states that if the policyholder fails to do so and if GEICO does not receive notice of the suit by other means, then that failure relieves GEICO of its obligation to defend the policyholder "and any other insureds under this policy and of any liability to pay any judgment or other sum on [the policyholder's] or any other insureds behalf." *Id.*

There is no ambiguity here. The policy states that if GEICO does not receive a copy of the summons and complaint relating to coverage from the policyholder or otherwise, then GEICO has no liability to pay any judgment on behalf of any insured. The Court thus rejects the Trustee's arguments that GEICO waived its right to receive notice of suit from Winslett and that Winslett had no duty to send GEICO notice of the suit.

Accordingly, the jury may consider whether Winslett's failure to notify GEICO of Guthrie's suit caused any of her damages.

The Court observes that had GEICO never received a policy limits demand in this case, then it would likely be entitled to judgment as a matter of law that it had no obligation to pay any judgment. The reason: without a rejected time limit demand, the only basis for liability would be for breach of the insurance contract, and there could be no breach if the insured failed to comply with the policy conditions. But that is not this case. Here, GEICO had a duty sounding in tort to act as a reasonably prudent insurer when presented with the policy limits demand. If it breached that duty, it may be liable to its insured for damages proximately caused by the breach. Because genuine factual disputes exist as to whether that duty was breached and whether that breach proximately caused damages to Winslett, summary judgment is not appropriate. While some may consider this to be a fine distinction, it must be made here given that Georgia law distinguishes between a claim for breach of an insurance contract and a tort claim for bad faith failure to settle.

CONCLUSION

As discussed above, genuine fact disputes preclude summary judgment in this case. GEICO's summary judgment motion (ECF No. 36) is denied, as is the Trustee's partial summary judgment

motion (ECF No. 37).  The Court will try this action during its March 2018 trial term.

IT IS SO ORDERED, this 12th day of December, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA