IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FIFE M. WHITESIDE, *Trustee in*
*Bankruptcy*,

    Plaintiff,

vs.

GEICO INDEMNITY COMPANY,

    Defendant.

                    *
                    *
                    *
                    *     CASE NO. 4:16-CV-313 (CDL)
                    *
                    *
                    *
                    *

O R D E R

    This Order addresses unfinished business from the final pretrial conference now that the Court has received additional briefing from the parties. The Court explains the causation and damages principles to be applied in this atypical failure to settle/excess liability case. Applying these principles, the Court decides the parties' motions in limine that were not decided at the pretrial conference.

I. **Background**

    GEICO rejected a time-limited offer to settle a liability claim within its insured's policy limits. At that time, coverage existed under the GEICO policy. After the time-limited demand expired without acceptance, the injured person filed an action against the driver of the vehicle, who for purposes of the present discussion would have been a covered insured under the GEICO policy when the lawsuit was filed. The defendant in

that action allowed the case to go into default, and a default judgment was entered against her in the amount of $2,916,204.00. GEICO unsuccessfully sought to have that judgment set aside both by the trial court and the Georgia Court of Appeals. The injured plaintiff subsequently filed an involuntary bankruptcy petition against the defendant, and the bankruptcy trustee filed this action against GEICO to recover for bad faith or negligent failure to settle the underlying personal injury claim. GEICO claims that it has no liability for such a claim because it had no opportunity to defend the underlying action before it went into default and because the actions of its insured (the defendant in the underlying action) in allowing the matter to go into default were the sole proximate cause of any damages she suffered. The Court previously denied summary judgment on these issues, and the case is scheduled for a jury trial.

## II. Causation and Damages

In general, a liability insurer who fails to settle a claim against its insured within the insured's policy limits is liable to the insured for any damages to which the insured is exposed in excess of those limits, if a reasonably prudent insurer would have settled the claim under similar circumstances. *E.g., Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003); *see Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1546-47 (11th Cir. 1991) (explaining Georgia law on

this issue).  Thus, the measure of damages is typically the amount that the final judgment exceeds the insured's liability policy limits.  *See, e.g., Brightman*, 580 S.E.2d at 521-22 (affirming jury verdict in the amount of the excess judgment); *McCall v. Allstate Ins. Co.*, 310 S.E.2d 513, 514-15 (Ga. 1984) ("Hence, where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability.").  The tort is the insurance company's bad faith failure to settle the claim, which then exposes its insured to an uncovered liability.  GEICO pointed the Court to no statutory provision or Georgia case supporting its contention that a jury in a bad faith failure to settle case may revisit the excess judgment from the underlying case.[1]  And the Court is unaware of any principle whereby a jury in this action could reconsider the reasonableness of the amount of the verdict/default judgment in the underlying case, a judgment which is final and binding on the person against whom

---

[1] GEICO relies on a number of non-Georgia uninsured motorist insurance coverage cases addressing the circumstances under which a default judgment against the uninsured motorist is conclusive of the insured's damages and binding on the UM carrier in terms of *the amount it must pay under its contract with its insured*.  *See, e.g., Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210 (N.M. 1996); *Champion Ins. Co. v. Denney*, 555 So. 2d 137 (Ala. 1989).  These cases do not address the issue in this case: whether a jury in a bad faith or negligent failure to settle tort case may revisit the amount of the excess judgment in the underlying case.

it was rendered and who was a GEICO insured when GEICO had an opportunity to resolve the claim within the policy limits.

Based on the foregoing, the starting point in this case is: if a jury finds that GEICO breached its duty to its insured when it failed to settle the claim within the policy limits, GEICO is potentially liable for the amount of the excess judgment if GEICO's failure to settle the case was the proximate cause of the excess verdict. GEICO's liability can be reduced if the jury determines that the insured, in allowing the underlying action to go into default, was "to some degree responsible for the injury or damages claimed." O.C.G.A. § 51-12-33(a).

To be clear about what the jury will have to decide in this case, the Court finds a refresher on certain fundamental principles to be helpful. Although GEICO contests that it breached any duty, the Court assumes for purposes of this Order that a jury will find that GEICO breached its duty when it failed to settle the underlying claim within the policy limits. The next issue for the jury to decide is causation. That analysis begins with the concept of "cause in fact," or "but-for causation." This concept simply means that without the breach the event would not have occurred. *Cause, but-for cause*, Black's Law Dictionary (10th ed. 2014); *see, e.g., Am. Ass'n of Cab Cos., Inc. v. Parham*, 661 S.E.2d 161, 167 (Ga. Ct. App.

2008) (explaining the difference between "but-for causation" and proximate cause).

Thus, for GEICO's failure to settle the claim within the policy limits to be the "but-for cause" of the default judgment, the jury must find that without the failure to settle, the default judgment would not have occurred. It is clear that if GEICO had settled the case within the policy limits when it had the opportunity to do so, there would have been no lawsuit filed and no default judgment. So, the failure to settle was a "but-for" cause of the default judgment.

The presence of "but-for" causation, standing alone, does not mean that GEICO is legally responsible for its insured's injury and damages. To be legally responsible, *i.e.*, liable, GEICO's breach must also be the *proximate cause*, or legal cause, of the default judgment. This concept has created unnecessary confusion in the law. As one noted treatise explains:

> "Proximate cause" — in itself an unfortunate term — is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would set society on edge and fill the courts with endless litigation. As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for

the consequences of any act, upon the basis of some
social idea of justice or policy.

*Cause*, *proximate cause*, Black's Law Dictionary (10th ed. 2014)

(internal quotation marks and citations omitted) (quoting W.

Page Keeton, *et al.*, Prosser & Keeton on Torts § 41, at 264 (5th

ed. 1984)).

Georgia courts have explained that proximate cause means "a
legally attributable causal connection between the defendant's
conduct and the alleged injury." *Mayor & Aldermen of Savannah
v. Herrera*, 808 S.E.2d 416, 423 (Ga. Ct. 2017) (quoting *Riggins
v. City of St. Marys*, 589 S.E.2d 691, 694 (Ga. Ct. App. 2003)).
And, the Council of Superior Court Judges of Georgia suggests
the following definition in its pattern jury instructions:

> Proximate cause means that cause which, in a natural
> and continuous sequence, produces an event, and
> without which cause such event would not have
> occurred.  In order to be a proximate cause, the act
> or omission complained of must be such that a person
> using ordinary care would have foreseen that the
> event, or *some similar event*, might reasonably result
> therefrom.

Georgia Suggested Pattern Jury Instructions - Civil 60.200.

Consistent with the definition of proximate cause under
Georgia law and Professor Keeton's observations, this Court has
previously charged a jury on causation as follows:

> Proximate cause is that which, in the natural and
> continuous sequence, unbroken by other causes,
> produces an event and without which the event would
> not have occurred.  Proximate cause is that which is
> nearest in order of responsible causes, as
> distinguished from remote; it is that which stands

last in causation, not necessarily in time or place, but in causal relation. The mere fact that one event chronologically follows another is alone insufficient to establish a causal connection between them. The proof offered by the Plaintiff must establish a connection between the act or acts of negligence charged and the injury alleged before the Plaintiff can be permitted to recover damages.

GEICO argues that its insured's failure to respond to the lawsuit against her and her failure to inform GEICO of the lawsuit caused the action to go into default and resulted in the default judgment. Thus, GEICO maintains that the insured's negligence and failure to comply with the conditions of its policy were the proximate cause of the default judgment, not GEICO's refusal to accept the policy limits demand. GEICO also maintains that the insured's conduct was the superseding cause of the default judgment. Superseding cause simply means "[a]n intervening act . . . that the law considers sufficient to override the cause for which the original tortfeasor was responsible, thereby exonerating that tortfeasor from liability." *Cause*, *superseding cause*, Black's Law Dictionary; *see also, e.g., Westbrook v. Atlanta Gas Light Co.*, 795 S.E.2d 320, 324 (Ga. Ct. App. 2016) ("[T]he general rule is that if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote[.]") (quoting *Ontario Sewing Mach. Co. v. Smith*, 572 S.E.2d 533, 536 (Ga. 2002))).

In denying GEICO's motion for summary judgment, the Court found that a genuine factual dispute exists on the issue of causation. If the jury concludes that GEICO's insured negligently allowed the lawsuit to go into default, then it would be authorized, but not required, to find that GEICO's breach was not the proximate cause of the default judgment or that her negligence was the superseding cause of the default judgment. This finding would require the jury to return a verdict in favor of GEICO. If the jury finds, however, that the insured was not negligent or that her negligence was not the proximate or a superseding cause of the default judgment, then GEICO would potentially be liable for her entire injury, the full amount of the default judgment. But if the jury finds that the insured was contributorily negligent, the Georgia apportionment statute, O.C.G.A. § 51-12-33, would apply, and the recoverable damages would be the amount of the default judgment less the insured's degree of fault in allowing the underlying action to go into default. If the jury finds that the insured is more than 50% at fault, Plaintiff can recover nothing on behalf of the insured's bankruptcy estate.

The Court intends to submit special interrogatories to the jury on these issues. The parties shall submit revised proposed jury instructions and proposed verdict forms by May 18, 2018.

**III. Motions in Limine**

With these principles in mind, the Court addresses the remaining motions in limine that were not decided orally at the pretrial conference.

A.  GEICO's Motion in Limine #1: The Default Judgment (ECF No. 54)

GEICO seeks to exclude evidence of (1) the amount of the default judgment and (2) the superior court judge's findings of fact regarding the amount of the default judgment.

1.  *The Amount of the Default Judgment*

GEICO argues that the amount of the default judgment is not relevant on the issue of damages in this case. GEICO's briefing, which relies mainly on cases where the plaintiff sought to recover *under an insurance contract*, reveals that GEICO is still under the impression that this action is a breach of contract coverage case. As discussed above and as the Court previously explained, it is not; it is a negligent or bad faith failure to settle tort case. *Whiteside v. GEICO Indem. Co.*, No. 4:16-CV-313 (CDL), 2017 WL 6347174 (M.D. Ga. Dec. 12, 2017). And, as explained in § II, the amount of the default judgment is certainly relevant on the issue of Plaintiff's damages. GEICO nonetheless presses the point.

GEICO continues to argue, as it did in its summary judgment briefing, that O.C.G.A. § 33-7-15 is dispositive of this entire action because the insured failed to notify GEICO of the injured

plaintiff's lawsuit against her before the default judgment was entered. The Court rejected that argument before, and it rejects that argument now. All the statute says is that a Georgia car insurance policy shall not be issued unless it "specifically requires the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy." O.C.G.A. § 33-7-15(a). The statute further states that if the insured does not comply with that provision and if that noncompliance is prejudicial to the insurer, then the insurer is relieved of "its obligation to defend its insureds *under the policy* and of any liability to pay any judgment or other sum *on behalf of its insureds*," unless a third party sends the documents to the insurer at least thirty days before a judgment is entered against the insured. *Id.* § 33-7-15(b)-(c) (emphasis added).

GEICO asserts that the phrase "relieve the insurer of . . . any liability to pay any judgment or other sum on behalf of its insured" should be interpreted to relieve the insurer not just of its obligations *under the contract* but also to relieve the insurer of any liability *in tort*. But under the plain language of the statute, an insured's breach of the policy only relieves

the insurer of its obligations under the policy, including any obligation to pay money on behalf of an insured. The statute simply does not address the damages issue in this *tort* case.

GEICO contends, however, that two Georgia cases suggest that O.C.G.A. § 33-7-15 should be interpreted to address damages in this tort case. First, GEICO relies on a Dekalb County Superior Court case, *Atlanta Casualty Co. v. Maestas*, No. 99-9388-2, 2001 WL 35834883 (Dekalb Cty. Super. Ct. Jan. 22, 2001). GEICO asserts that *Atlanta Casualty* was a negligent failure to settle tort case, but it was not. Rather, the superior court concluded that the insurance company had no duty *under the insurance policy* to defend or indemnify the insured because the insured did not provide the insurance company with notice of the lawsuit against her as required by the policy. GEICO latches on to one snippet of dicta where the superior court judge, without any discussion, stated that if the insured was trying to recover for negligent failure to settle, that claim was also barred because she did not comply with her contractual obligations, "relieving [the insurance company] of any obligation *under the policy.*" *Id.* at 3 (emphasis added). Significantly though, the judge noted that there was no evidence the insurance company ever received an offer from the injured person to settle within policy limits, so it appears that the judge found that there was no bad faith or negligent failure to settle the tort claim at

all.[2]  Thus, he could not have reached a holding on whether O.C.G.A. § 33-7-15(b) applies in such cases.  Even if he had, the superior court judge provided no rationale for such a holding.  For these reasons, *Atlanta Casualty* is not persuasive authority that supports GEICO's argument.

Second, GEICO argues that the case of *Chadbrooke Insurance Co. v. Fowler*, 426 S.E.2d 578 (Ga. Ct. App. 1992) is dispositive.  It is not.  *Chadbrooke* is another action regarding policy coverage.  The *Chadbrooke* court explained that if an insurance contract contains a notice-of-suit requirement as required by O.C.G.A. § 33-7-15 and if the insured fails to comply with the notice requirement, then that can "operate to 'relieve the insurer of its obligation to defend its insureds under the policy and of any liability to pay any judgment or other sum on behalf of its insureds.'" *Id.* at 580 (quoting *Mahone v. State Farm Mut. Auto. Ins. Co.*, 373 S.E.2d 809, 811 (Ga. Ct. App. 1988)).  In *Chadbrooke*, the insured did not satisfy the notice requirement, so the insurer was "relieved of its obligation to pay the judgment entered against" its insured.

---

[2] The opinion of the Georgia Court of Appeals tells a dramatically different story of the facts on appeal: the plaintiff did assert a bad faith failure to settle claim, there was evidence of a settlement demand, and there was evidence that the insurer had notice of the suit before the default judgment was entered.  *See generally Thomas v. Atlanta Cas. Co.*, 558 S.E.2d 432 (Ga. Ct. App. 2001).  Based on the fact disputes regarding the insurer's notice and opportunity to settle, the Court of Appeals found that the superior court judge erred in dismissing the plaintiff's counterclaims. *Id.* at 439-40.

*Id.* at 581. In other words, the insurer was not contractually obligated to pay the judgment against its insured. Like *Atlanta Casualty*, this case does not address the issue before this Court—the measure of damages in a bad faith or negligent failure to settle case.

For all of these reasons, the Court denies GEICO's motion to exclude the amount of the default judgment.

### 2. *Text of the Default Judgment*

In addition to the amount of the default judgment, GEICO objects to the text of the default judgment, particularly the superior court judge's findings of fact that explain the basis for the amount of the default judgment. This portion of GEICO's motion is granted. The default judgment order is hearsay, and it is not admissible under the public records hearsay exception of Federal Rule of Evidence 803(8). *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994). Therefore, P-29 is excluded, except Plaintiff shall be permitted to introduce the amount of the default judgment.

### B. GEICO's Motion in Limine # 2: Post-May 23, 2012 Evidence of the Injured Plaintiff's Bodily Injury Claim (ECF No. 54)

GEICO seeks to exclude post-May 23, 2012 medical evidence regarding the injured plaintiff's bodily injury claim. GEICO contends that such evidence is not relevant on the issue of whether GEICO acted reasonably in rejecting the injured

plaintiff's settlement demand on May 23, 2013. That is true. As discussed above, the jury in this case shall not be permitted to reconsider the amount of the default judgment; the jury's job is to determine whether that injury was caused by GEICO, its insured, or some combination of the two.

Plaintiff nonetheless argues that evidence from after May 23, 2012 is relevant to show what medical treatment was foreseeable when GEICO considered and rejected the settlement demand. But GEICO had to determine whether future medical treatment was foreseeable at the time of its decision—not with the benefit of 20/20 hindsight six years later. Therefore, the injured plaintiff's medical records that were not reasonably available to GEICO as of May 23, 2012 are irrelevant. If any portions of P-44, P-45, P-46, and P-47 are dated after May 23, 2012, they are excluded.

C.  GEICO's Motion in Limine ## 3 & 4: Evidence of Events After July 31, 2012 (ECF Nos. 54 & 76)[3]

GEICO seeks to exclude evidence of its conduct after July 31, 2012 (the day before the default judgment was entered on August 1, 2012), including evidence of how GEICO handled the claim after it learned of the default judgment and evidence that GEICO hired an attorney to represent its insured in the

_____

[3] Plaintiff moved to strike GEICO's second motion in limine on this issue (ECF No. 76) as untimely. The Court considers the second "motion" to be a supplement that was submitted at the Court's request. Plaintiff's motion to strike (ECF No. 79) is therefore denied.

involuntary bankruptcy action.[4]  GEICO argues that such evidence is irrelevant to the two issues the jury must decide: (1) whether GEICO acted unreasonably in rejecting the injured plaintiff's policy limits settlement demand, and (2) if so, the amount of damages proximately caused by GEICO's failure to settle the claim within policy limits.

Plaintiff contends that the evidence is relevant to show a breach of GEICO's continuing duty of good faith toward its insured.  Plaintiff asserts that GEICO's duty of good faith extended beyond its decision of whether to accept an offer to settle a claim within policy limits, but the cases Plaintiff relies on do not support this argument.

First, Plaintiff relies on *U.S. Fidelity & Guaranty Co. v. Evans*, 156 S.E.2d 809 (Ga. Ct. App. 1967).  In that case, the insurance company rejected a settlement demand for $9,500.00.  The case went to trial and the jury awarded the plaintiff $25,000.00.  After the verdict but before the appeal, the plaintiff made a second settlement demand for the policy limit of $10,000.00, and the insurance company rejected it.  The Georgia Court of Appeals affirmed the jury's verdict, and then the insured sued based on the insurer's refusal to accept the settlement demands.  A jury concluded that the second refusal was in bad faith and awarded the insured $15,000.00 (the amount

---

[4] GEICO does not seek to exclude post-August 1, 2012 evidence if it is relevant bias, interest, or impeachment evidence.

of the excess verdict). The question before the Georgia Court of Appeals was whether there was enough evidence for a jury to conclude that the insurer, in refusing the second settlement demand, breached its duty "to refrain from taking an unreasonable risk on behalf of its insured"—a risk that the "trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results." *Id.* at 811-12 (quoting Robert E. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1147 (1954)). The answer was yes. *Id.* at 811-12. In sum, *Evans* teaches that an insurer must "give at least equal consideration to the interest of the insured" in deciding whether to accept or reject a policy limits settlement demand. *Id.* at 812.

Second, Plaintiff relies on *Thomas v. Atlanta Casualty Co.*, 558 S.E.2d 432 (Ga. Ct. App. 2001).[5] In that case, an injured person filed an action against the insured; the insurer was notified, but that action was dismissed without prejudice. The injured person filed a renewal action and served the insured. The insured did not notify the insurer of the renewal action, but there was evidence that the injured person did notify the insurer. Neither the insured nor the insurer defended the lawsuit, and a default judgment was entered against the insured. The insurer argued that it was relieved of its obligation under

---

[5] This case is the appeal of *Atlanta Casualty Co. v. Maestas*, discussed *supra* § III.A.1.

the policy to pay any judgment on behalf of the insured based on O.C.G.A. § 33-7-15(b). The Georgia Court of Appeals found, however, that because there was evidence that the insurer received a copy of the renewed complaint from the injured party before the default judgment, there was a fact question on whether O.C.G.A. § 33-7-15(c) applied to prevent the insurer from relying on the insured's failure to forward a copy of the complaint to bar coverage. *Thomas*, 558 S.E.2d at 437-38. And, there was evidence that after the default judgment was entered, the insured's attorney made a demand on the insurer to settle the case within policy limits. *Id.* at 438.

The *Thomas* court explained that if there is a "default judgment already in excess of the policy limits, the insurer has the duty to act with the utmost good faith on behalf of the insured to dispose of the judgment against her without exposing her to the risk of excess liability inherent in the default judgment." *Id.* at 439. "In deciding *whether to accept an offer to settle a claim within policy limits*, the insurer must accord the interest of its insured the same faithful consideration it gives its own interest." *Id.* (emphasis added) (quoting *Southern Gen. Ins. Co. v. Holt*, 409 S.E.2d 852, 856 (Ga. Ct. App. 1991)). "When the insurer considers its own self-interest regarding whether or not *to settle a case within policy limits*, the insurer must give at least equal consideration to the interests

of its insured under the facts and circumstances of the case."
*Id.* (emphasis added). Therefore, *Thomas* establishes that if the insurer arguably has some duty to entertain a settlement demand after a default judgment is entered (*e.g.*, because it had notice of the underlying lawsuit before the default judgment was entered) but refuses to do so, then there is generally a genuine factual dispute on whether the insurer acted in bad faith. *Id.*

Based on *Evans* and *Thomas*, it is clear that an insurer has a duty to exercise good faith in deciding whether to accept a settlement offer within policy limits so that its insured is not exposed to an unreasonable risk of an excess judgment. That duty does not end with an initial settlement demand: if the insurer has an opportunity to settle the case within policy limits after an excess judgment is entered against the insured, then the insurer must give its insured's interest the same consideration it gives its own interest in evaluating that settlement demand. But *Evans* and *Thomas* do not provide any authority for finding that this "continuing duty" extends further, as Plaintiff argues. Here, unlike in *Evans* and *Thomas*, there is no evidence of a policy limits demand after the default judgment, and the Court is unaware of any evidence that GEICO rejected an opportunity to settle for the policy limits after the default judgment was entered against the insured. Without an opportunity to settle after the default judgment, GEICO could

not eliminate the risk of an excess verdict (except, perhaps, by seeking to have the default judgment set aside, which GEICO tried and failed to do), so GEICO's actions *after* the default judgment are irrelevant. Accordingly, evidence of GEICO's actions *after* July 31, 2012, including evidence that it hired an attorney to represent its insured in the bankruptcy action, shall be excluded unless it is relevant to show bias or interest or is used as impeachment evidence.

D.  GEICO's Motion in Limine # 4: Evidence that GEICO Hired Ted Theus to Challenge the Default (ECF No. 54)

GEICO also seeks to exclude as irrelevant evidence that it hired attorney Ted Theus to represent its insured in seeking to set aside the default. Plaintiff argues that this evidence is relevant on the issue of proximate cause because Theus will testify that he believed, based on his conversation with the insured, that she did not know that she needed to inform GEICO of the lawsuit against her. In other words, Plaintiff wants to offer as evidence Theus's testimony regarding what the insured told him. Plaintiff offered no basis for admitting this hearsay, so it will not be admitted.

E.  Plaintiff's Motion in Limine # 16: Evidence or Argument Regarding the Default Judgment's Alterability

Plaintiff argues that the Court should exclude argument that the amount of the default judgment can be changed or

altered.  For  the  reasons  set  forth  in  § II,  this  motion  is
granted.

## IV.  Deposition Designations

Plaintiff  and  GEICO  designated  deposition  testimony  to  be
played  at  trial.   They  each  filed  objections  to  the  other's
designations.

### A.   GEICO's Objections (ECF No. 68)

#### 1.  *Depositions of Barry Heitin and Steve Fike*

GEICO  objects  to  all  of  Plaintiff's  designations  from  the
deposition  of  Barry  Heitin  and  most  of  the  designations  from  the
deposition  of  Steve  Fike.[6]   The  objected-to  designations  relate
to  GEICO's  post-default  judgment  activities.   As  discussed
above,  such  evidence  is  irrelevant.   The  Court  therefore
sustains  GEICO's  objections  to  these  designations.

#### 2.  *Deposition of Charlie Goodroe*

GEICO  objects  to  all  of  Plaintiff's  designations  from  the
deposition  of  Charlie  Goodroe  because  Plaintiff  has  not
established  that  Goodroe  will  be  unavailable  for  trial.   At  the
pretrial  conference,  the  Court  emphasized  that  it  follows
Federal  Rule  of  Civil  Procedure  32  regarding  permissible  use  of
depositions  at  trial.   Therefore,  the  Court  sustains  GEICO's
objections  to  these  designations  at  this  time.   If  Plaintiff  can

---

[6] GEICO did not object to the following designations from Steve Fike's
deposition: 4:1-25, 5:1-10, 40:1-8.

show a basis for using this deposition at trial, the Court will reconsider this ruling.

### B. Plaintiff's Objections (ECF No. 69)

Plaintiff objects to GEICO's designations from the deposition of Bonnie Winslett and also asks that certain portions of her deposition be played if her video deposition is used in lieu of live testimony at trial. Before the Court evaluates the propriety of these designations, the Court would like to know if such an exercise is necessary. Therefore, within seven days of today's order, each party shall file a short supplemental brief that states whether Winslett is expected to testify live at trial. GEICO may also respond to Plaintiff's objections and additional designations.

CONCLUSION

As discussed above, the Court intends to submit special interrogatories to the jury on the causation and damages issues addressed in this Order. The parties shall submit revised proposed jury instructions and proposed verdict forms by May 18, 2018. GEICO's Motion in Limine #1 (ECF No. 54) is granted in part and denied in part; GEICO's Motion in Limine #2: (ECF No. 54) is granted; GEICO's Motions in Limine # 3 and # 4 (ECF Nos. 54 & 76) are granted; Plaintiff's Motion in Limine # 16 (ECF No. 57) is granted; and Plaintiff's Motion to Strike (ECF No. 79) is denied. The Court sustains GEICO's objections to Plaintiff's

deposition designations.  The Court defers ruling on Plaintiff's objections to GEICO's deposition designations; within seven days of today's Order, each party shall file a short supplemental brief as instructed *supra* § IV.B.

IT IS SO ORDERED, this 29th day of March, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA