IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FIFE M. WHITESIDE,               *

    Plaintiff,               *

vs.                              *        CASE NO. 4:16-CV-313 (CDL)

GEICO INDEMNITY COMPANY,         *

    Defendant.               *

_____

O R D E R

Defendant renewed its motion for judgment as a matter of law that it made during the trial. In the alternative, Defendant seeks a new trial. Defendant also asks the Court to certify three questions to the Georgia Supreme Court. For the reasons explained in the remainder of this Order, the motions (ECF Nos. 137 & 138) are denied.

THE TRIAL

As recounted in more detail below, Defendant rejected a time-limited offer to settle a liability claim for its insured's policy limits of $30,000. At that time, coverage existed under the insurance policy. After the time-limited demand expired without acceptance, Terry Guthrie, the injured person, filed an action against the driver of the vehicle, Bonnie Winslett. When that action was filed, Winslett would have been a covered insured under the policy. Winslett allowed the case to go into default,

and a default judgment was entered against her in the amount of $2,916,204.00. Guthrie filed an involuntary bankruptcy petition against Winslett, and the bankruptcy trustee ("Plaintiff") filed this action against Defendant to recover for bad faith or negligent failure to settle the underlying personal injury claim.

The jury returned a verdict in favor of Plaintiff, finding as follows: (1) Defendant failed to exercise the degree of care a reasonably prudent insurance company should exercise when it did not accept the policy limits demand of $30,000; (2) Defendant's failure to accept the demand was a proximate cause of the default judgment that was later entered against Winslett; (3) Winslett's contributory negligence was also a proximate cause of the default judgment; and (4) Winslett was 30% at fault and Defendant was 70% at fault for the default judgment. Verdict 1-2, ECF No. 117. Based on these findings, the jury awarded damages to Plaintiff for the amount that the default judgment exceeded the liability limits of $30,000, to be reduced by 30%. Based on the parties' stipulation as to accrued interest on the judgment and after reduction for Winslett's fault, the Court entered judgment in favor of Plaintiff in the amount of $2,763,742.00. Am. J., ECF No. 124.

## DEFENDANT'S ARGUMENTS

Defendant makes three basic arguments in support of its motion for judgment as a matter of law: (1) the evidence

introduced at trial established as a matter of law that Winslett's failure to notify Defendant of the lawsuit when it was served upon her was the sole proximate cause of the default judgment; (2) O.C.G.A. § 33-7-15(c) and the insurance policy excuse Defendant of any liability for its failure to accept the policy limits demand because its insured failed to notify Defendant of the lawsuit when it was served upon her; and (3) the Court's ruling that Defendant could not contest the amount of the default judgment violates Defendant's constitutional due process rights. The Court addresses each of these arguments in turn.

DISCUSSION

## I. Proximate Cause

This case presented classic issues related to legal causation. Guthrie, who was riding his bicycle, was struck by Winslett, who was operating a motor vehicle. Guthrie was taken to the hospital by ambulance where he received treatment and diagnostic tests. His medical expenses for two hospital visits slightly exceeded $9,000. At the time of the wreck, Winslett was operating a vehicle she had borrowed from a friend. Winslett did not have a driver's license and was cited for operating the vehicle without a license. Defendant nevertheless treated her as a permissive driver and accepted her as an insured under its policy that covered the vehicle. It never questioned coverage for the accident prior to the entry of the default judgment

against Winslett, its insured, and it never disputed that Winslett was liable.

Shortly after the wreck, Guthrie's counsel made a time-limited demand for the policy's $30,000 liability limits. Defendant made a counteroffer of $12,000. Defendant did not ask for additional time or information before it rejected the policy limits demand with its counteroffer. Guthrie's counsel ignored the counteroffer and filed suit on behalf of Guthrie against Winslett. Winslett was served with the lawsuit, but neither she nor Guthrie's counsel notified Defendant of the lawsuit. The lawsuit went into default, and Guthrie's counsel subsequently obtained a default judgment against Winslett in the amount of $2,916,204.00. Defendant had no notice of the default judgment until after it was entered. Defendant sought to have the default judgment set aside, but that motion was denied and the denial was affirmed by the Georgia Court of Appeals. Accordingly, Winslett has a final and enforceable judgment against her in the amount of $2,916,204.00.

Winslett was forced into bankruptcy, and the trustee of her bankruptcy estate filed this action against Defendant on behalf of her creditors, including Guthrie. Plaintiff claimed in this action that Defendant's bad faith failure to accept the policy limits demand proximately caused the judgment to be rendered against Winslett in excess of the policy limits. Defendant

maintains that it cannot be liable for the excess judgment, even if it should have paid the policy limits demand, because it was never notified of the lawsuit before it went into default.

The Court concluded that genuine factual disputes existed as to proximate cause, intervening cause, and contributory negligence. Without objection, the Court instructed the jury on these issues as follows:

> If you find that GEICO failed to exercise that degree of care that a reasonably prudent insurance company would exercise under the circumstances in this case, then the second issue you must decide is whether the Plaintiff has proved by a preponderance of the evidence that the default judgment against Bonnie Winslett was caused by GEICO's failure to exercise this degree of care.

> When considering whether GEICO's conduct "caused" the default judgment, you must use the legal meaning of "causation." Under the law, there are two aspects of legal causation. First, for the default judgment to have been caused by GEICO's failure to exercise the degree of care that a reasonable insurance company would have exercised under the circumstances, Plaintiff must prove that the default judgment would not have occurred if GEICO had acted in a reasonably prudent manner. So that is the first step in the causation analysis. The second aspect of legal causation is known as "proximate cause." Proximate cause under the law places some boundaries on what can be considered the legal cause of an injury and damages.

> For example, if on your way to court this morning, you ran a red light and collided with someone in the intersection who had a green light, what caused you to collide with the other vehicle? Someone might say that if you had stayed in bed this morning and had not come to court, the wreck would have never have happened. So you coming to court this morning caused you to be in that intersection and caused the wreck. But under the law you coming to court would not be the proximate

cause of the wreck. The connection between you coming
to court and the wreck is not sufficiently close to be
the proximate cause of the collision. The proximate
cause of the wreck would be your failure to stop when
the light was red.

Under the law, "proximate cause" means that cause
which, in a natural and continuous sequence, produces
an event, and without which cause such event would not
have occurred. So, when I use the expression
"proximate cause," I mean a cause that, in the natural
or ordinary course of events, produced the event. In
order to be a proximate cause, the act or omission
complained of must be such that a person using ordinary
care would have foreseen that the event, or some
similar event, might reasonably result from it. There
may be more than one proximate cause of an event.

The mere fact that one event chronologically follows
another is not enough, on its own, to establish a
causal connection between them. In some cases, an
intervening act may "cut off" causation for an event
that occurred after that intervening act. But an
intervening act does not break the causal connection
between a defendant's conduct and an event if the
intervening act was triggered by the defendant's
conduct and could have reasonably been anticipated or
foreseen by the defendant. So, a defendant may be held
liable for an injury or damages when that defendant's
failure to exercise reasonable care puts other forces
in motion or operation resulting in the injury or
damages when such other forces are the natural and
probable result of the act that the defendant committed
and that reasonably should have been foreseen by the
defendant. When the injuries or damages could not
reasonably have been foreseen as the natural,
reasonable, and probable result of the original failure
by the defendant to exercise reasonable care, then the
defendant's original failure to exercise reasonable
care is not a proximate cause of the injury or damages,
and there can be no recovery. If the chain reaction
that resulted from the defendant's alleged failure to
exercise reasonable care could reasonably have been
foreseen as the natural, reasonable, and probable
result of the defendant's original failure by the
defendant to exercise reasonable care, then the
defendant's original failure to exercise reasonable

care can be a proximate cause of plaintiff's injuries or damages, and plaintiff may recover.

In this case, you must decide whether GEICO's failure to pay the policy limits demand was a proximate cause of the default judgment. GEICO contends that Bonnie Winslett's failure to notify GEICO of the lawsuit was an intervening act that breaks the causal chain between GEICO's conduct in declining Terry Guthrie's policy limits demand and the default judgment against Bonnie Winslett. GEICO further asserts that it could not reasonably have anticipated that an insured like Bonnie Winslett would fail to notify it of a lawsuit against her and allow the lawsuit to go into default because GEICO's insurance policy required that GEICO receive notice of any lawsuit against its insured as a condition of coverage. To decide whether Bonnie Winslett's conduct was an intervening act that cuts off causation from GEICO's failure to pay the policy limits demand, you must determine whether GEICO reasonably could have anticipated under the circumstances that Bonnie Winslett would not notify GEICO of the lawsuit and that it would go into default and result in a default judgment against Bonnie Winslett. GEICO's failure to pay the policy limits demand cannot be a proximate cause of the default judgment unless, under the circumstances, GEICO should have reasonably anticipated that Bonnie Winslett would not notify it of the lawsuit and a default judgment could result against Ms. Winslett.

If you determine that GEICO's failure to exercise that degree of care that a reasonably prudent insurance company would have exercised under the circumstances was a proximate cause of the default judgment, then you would answer "Yes" to Question 2 on the verdict form. If you find that Plaintiff failed to prove that GEICO's conduct was a proximate cause of the default judgment, you would answer "No" to Question 2 on the verdict form, and that would end your deliberations.

If you answer "Yes" to Question 2, then you must next determine whether GEICO's conduct was the sole proximate cause of the default judgment. To answer this question, you must determine whether Bonnie Winslett was negligent and, if so, whether her negligence, combined with GEICO's conduct, was a proximate cause of the default judgment. If you find

that Bonnie Winslett was not negligent or that her
negligence was not a proximate cause of the default
judgment, that means you find that GEICO's conduct was
the sole proximate cause of the default judgment.

GEICO contends that Bonnie Winslett was negligent when
she failed to notify GEICO of Terry Guthrie's lawsuit
and when she failed to respond to the lawsuit. GEICO
also contends that Bonnie Winslett's negligence was a
proximate cause of the default judgment against Bonnie
Winslett. Plaintiff denies that Bonnie Winslett was
negligent. GEICO has the burden of proof on this
defense. "Negligence" is the failure to use reasonable
care, which is the care that a reasonably careful
person would use under like circumstances. Negligence
is doing something that a reasonably careful person
would not do under like circumstances or failing to do
something that a reasonably careful person would do
under like circumstances.

If you find that Bonnie Winslett was negligent, then
you must determine whether her negligence was a
proximate cause of the default judgment. As I stated
previously, there may be more than one proximate cause
of an event. If two or more acts operate directly or
happen together in bringing about an event, then both
acts together can be considered the proximate cause of
the event. The fact that the event would not have
happened if only one of the acts had occurred does not
prevent (or limit) the other act from constituting the
proximate cause. If both acts contributed directly and
concurrently or together in bringing about the event,
they together constitute the proximate cause.

If you find by a preponderance of the evidence that
Bonnie Winslett was not negligent or that her
negligence was not a proximate cause of the default
judgment against her, you would answer "No" to Question
3 on the verdict form. If you answer "No" to Question
3, this means that you find that GEICO's conduct was
the sole proximate cause of the default judgment
against Bonnie Winslett and that Plaintiff should be
awarded $2,886,204.00, and you should place a check on
that finding in the verdict form. If you award
Plaintiff damages, you should go to Question 5 on the
verdict form.

If you find by a preponderance of the evidence that
Bonnie Winslett was negligent and that her negligence
was a proximate cause of the default judgment, you
would answer "Yes" to Question 3 on the verdict form.
If you answer "Yes" to Question 3, this means that you
find that GEICO's conduct was not the sole proximate
cause of the default judgment, and you must go to
Question 4 and determine Bonnie Winslett's percentage
of fault compared to that of GEICO. If you find that
Bonnie Winslett's percentage of fault is 50% or
greater, then Plaintiff is not entitled to recover any
damages on behalf of Bonnie Winslett's bankruptcy
estate, and that would end your deliberations. If you
find that Bonnie Winslett's percentage of fault is less
than 50%, then that means you are making an award in
favor of Plaintiff against GEICO in the amount of
$2,886,204.00 (the amount of the verdict in excess of
the policy limits), reduced by the percentage of fault
you assign to Bonnie Winslett. And you should place a
check on that finding in the verdict form. If you find
that Bonnie Winslett's percentage of fault is less than
50%, then you should continue to Question 5.

Jury Instructions 9-16, Charge No. 8, ECF No. 121.

The jury answered the special interrogatories as follows:

(2) Do you find by a preponderance of the evidence
that Defendant GEICO Indemnity Company's failure to
accept Terry Guthrie's offer to settle his claims
against Bonnie Winslett for $30,000 was a proximate
cause of the default judgment against Bonnie Winslett?

Answer Yes or No ___yes___

* * *

(3) Do you find by a preponderance of the evidence
that Bonnie Winslett was negligent and that her
negligence was a proximate cause of the default
judgment against her?

Answer Yes or No ___yes___

* * *

(4) Indicate Bonnie Winslett's percentage of fault
compared to that of Defendant GEICO Indemnity Company.

9

Please answer in terms of percentages. The total of
the percentages should add up to 100%.

Bonnie Winslett      30  %

GEICO Indemnity Company    70  %

* * *

  X  We, the jury, find that damages shall be awarded
to Plaintiff and against Defendant in the amount of
$2,886,204.00 less the percentage of Ms. Winslett's
fault as found above.

Verdict 1-2.

Defendant contends that no reasonable jury could have
answered these interrogatories the way this jury did. The Court
disagrees. On the issue of whether Winslett's conduct was an
intervening act sufficient to break the causal chain between
Defendant's denial of the policy limits demand and the default
judgment, the question is whether it was reasonably foreseeable
to Defendant when it denied the demand that a lawsuit would be
filed, that Winslett may not notify Defendant of the lawsuit,
that the lawsuit thus may go into default, and that a judgment in
excess of the policy limits may be entered against Winslett. The
jury found that it was reasonably foreseeable, and there was
evidence to support the jury finding.

Defendant knew that Winslett was not the named insured on
its policy and that she likely would not have a copy of the
policy. It also knew that she had been cited for driving without
a license, and through minimal investigation could have concluded

that she did not have a driver's license. Defendant also had
information reasonably available to it that Winslett was not
stable, and that she lived in an unrentable apartment with no
electricity and no furniture except for a mattress on the floor.
Defendant had information available to it that should have put it
on notice of Winslett's unreliability and lack of sophistication,
which would lead a reasonable insurance company to conclude that
such a person may not notify it of a lawsuit or respond to one
served upon her. Remarkably, no evidence was produced at trial
that Defendant ever explicitly informed Winslett that she should
notify it if she was sued. Winslett testified that she did
nothing after being served with the suit because she thought
Defendant was handling it based on its prior contact with her.
Notably, Defendant's own claims manual recognizes that
notwithstanding the notice requirements in the policy, it should
be anticipated that some insureds may not notify Defendant of a
lawsuit and Defendant's employees should take precautions:

> When an insured is served, he is then obligated by the
> terms of the policy to "send us all papers dealing with
> claims or suits immediately." While an insured has
> this obligation placed upon him or her by the terms of
> the policy, good practice is to remind the insured of
> the importance of this obligation while the
> investigation of the claim is underway. If the examiner
> feels there is a good chance that suit will be filed,
> remind the insured of his or her obligation in writing.
> The insured should be instructed to call us immediately
> upon receipt of a summons and complaint and to send to
> us the summons and complaint via registered or
> certified mail.

Pl.'s Trial Ex. P48 at IX-6 to IX-7, Claims Manual, ECF No. 119-9 at 12-13

Based on the foregoing, the Court finds that evidence existed from which a reasonable jury could conclude that Defendant's failure to accept the policy limits demand was a proximate cause of the excess judgment and that Winslett's intervening conduct was reasonably foreseeable such that it did not break the chain of causation as a superseding cause. As courts have long recognized, jurors, using their common sense and every day experience, are best equipped to answer these types of questions involving legal causation. *See, e.g., Ontario Sewing Co., Ltd. v. Smith,* 572 S.E.2d 533, 536 (Ga. 2002) (in which former Justice Sears, who coincidentally appears to be lead counsel for Defendant in this action for post-trial motions and presumably appeal purposes, stated that "it is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by the courts 'in plain and undisputed cases'" (quoting *Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman*, 398 S.E.2d 16, 18 (Ga. 1990))). The causation question presented here is not plain and undisputed. It would be judicial arrogance for a single judge to second guess the jury's resolution of the disputed facts, even if he disagreed with how the jury resolved them.

The jury here found that Defendant breached its duty to its insured when it did not accept the policy limits demand; that this breach was a proximate cause of the default judgment; that Winslett's negligence was also a proximate cause of the default judgment; and that her negligence was 30% compared to Defendant's 70%. These findings demonstrate that the jury understood the law and properly followed the verdict form. No basis exists for the Court to second guess the jury.

## II. O.C.G.A. § 33-7-15 and the Policy's Notice Provisions

The Court agrees with Defendant that under the policy's notice provisions, Winslett had a duty to notify GEICO when she was served with Guthrie's lawsuit, and she breached the policy's notice provisions when she failed to do so. The Court further agrees that Winslett's failure to notify Defendant would likely prevent her from recovering against Defendant on a *breach of contract* claim for the policy limits of that policy. But the claim in this court is not a breach of contract claim on the policy. It is a tort claim for bad faith failure to settle the liability claim—a claim that was undisputedly covered under the policy at the time of Guthrie's settlement demand. While Winslett's conduct in failing to notify Defendant of the lawsuit could certainly be considered as evidence of her negligence and if that negligence were found to be 50% or greater would prevent her recovery on the tort claim, the Court has concluded that it

does not prevent her recovery on the tort claim *as a matter of law*. The jury was properly instructed on these issues and rejected, as a matter of fact, that Winslett's negligence was equal to or greater than Defendant's failure to exercise that degree of care that a reasonably prudent insurance company would exercise under the circumstances. As the Court has previously explained, this was a jury question. *Whiteside v. GEICO Indem. Co.*, No. 4:16-CV-313 (CDL), 2017 WL 6347174, at *5-*8 (M.D. Ga. Dec. 12, 2017). At trial, sufficient evidence was introduced to support the jury's finding.

Defendant argues that O.C.G.A. § 33-7-15 prevents recovery here. That statute states:

(a) No motor vehicle liability insurance policy covering a motor vehicle principally garaged or principally used in this state shall be issued, delivered or issued for delivery, or renewed in this state unless such policy contains provisions or has an endorsement thereto which specifically requires the insured to send his insurer, as soon as practicable after the receipt thereof, a copy of every summons or other process relating to the coverage under the policy and to cooperate otherwise with the insurer in connection with the defense of any action or threatened action covered under the policy.

(b) Noncompliance by the insured with this required provision or endorsement shall constitute a breach of the insurance contract which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insureds under the policy and of any liability to pay any judgment or other sum on behalf of its insureds.

(b.1) In the event the insurer denies coverage and it is determined by declaratory judgment or other civil

process that there is in fact coverage, the insurer shall be liable to the insured for legal cost and attorney's fees as may be awarded by the court.

(c) Subsections (a) and (b) of this Code section shall not operate to deny coverage for failure to send a copy of a summons or other process relating to policy coverage if such documents are sent by a third party to the insurer or to the insurer's agent by certified mail or statutory overnight delivery within ten days of the filing of such documents with the clerk of the court. If the name of the insurer or the insurer's agent is unknown, the third party shall have a period of 30 days from the date the insurer or agent becomes known in which to send these required documents. Such documents must be sent to the insurer or agent at least 30 days prior to the entry of any judgment against the insured.

O.C.G.A. § 33-7-15.

The plain language of the statute provides that if an insured fails to notify its insurance carrier of a lawsuit, this noncompliance "shall constitute a *breach of the insurance contract* which, if prejudicial to the insurer, shall relieve the insurer of its obligation to defend its insured[] under the policy and of any liability to pay any judgment or other sum *on behalf of its insured[]*." *Id.* § 33-7-15(b) (emphasis added); *accord* Def.'s Trial Ex. D23, Ga. Family Auto. Ins. Policy 6, ECF No. 119-27 at 9 (tracking the language of O.C.G.A. § 33-7-15(b) and stating that if the insured fails to comply with the policy's notice provision, Defendant will be relieved of "any liability to pay any judgment or other sum on [the policyholder's] or any other insured[']s behalf"). Thus, if an insured fails to notify its insurer of a lawsuit and the insurer is prejudiced, the

insured loses any coverage she may have under the policy and the insurer has no obligation to pay any person who has a claim against its insured.  But this provision does not immunize an insurance company from having to compensate its own insured if it commits tortious conduct by failing to pay a policy limits demand in bad faith.  The phrase "on behalf of its insured" does not mean "to its insured."  Defendant's policy may not contractually require it to pay Guthrie "on behalf of" its insured, Winslett; but neither the statute nor the policy relieves Defendant from compensating its insured, Winslett, for its tortious conduct directed toward her.

Defendant also argues that the policy bars all claims, not just breach of contract claims, if the insured does not comply with the policy's terms and conditions because it states that "[n]o suit will lie against [Defendant] . . . [u]nless the insured has fully complied with all the policy's terms and conditions."  Def.'s Trial Ex. D23, Ga. Family Auto. Ins. Policy 6, ECF No. 119-27 at 9.  Defendant argues that this provision clearly bars not only claims under the policy but also tort claims for bad faith or negligent failure to settle a claim.  But this language does not clearly or expressly bar extra-contractual damages claims resulting from Defendant's tortious conduct.

Defendant further emphasizes that if a claim had been made under the policy *after* Winslett failed to comply with certain

policy provisions, then the claim would not have been covered under the policy. Defendant is correct that if there is no coverage for a claim, there can be no recovery for bad faith refusal to pay the claim. *See, e.g.*, *Parris & Son, Inc. v. Campbell*, 196 S.E.2d 334, 340-41 (Ga. Ct. App. 1973) (finding that because the insurer offered to pay the full amount of its liability under the policy, it could not be liable for refusing to pay a larger amount demanded by the insured). But Defendant cited no authority suggesting that if an insurer in bad faith or negligently rejects a settlement demand for a claim that is covered under the policy—like Guthrie's claim was—the insured's subsequent conduct voids the insured's failure-to-settle tort claim as a matter of law.

Of course, the insured's failure to notify her insurer can certainly be considered in determining whether the insured's failure to notify the insurer constitutes contributory negligence or the proximate cause of the default judgment. And the jury in this case did consider that conduct. But the Court rejects Defendant's continued insistence that a breach of contract defense excuses its tortious conduct *as a matter of law.*

## III. Opportunity to Contest Amount of Excess Verdict

Defendant argues that its constitutional due process rights were violated by the Court's ruling that it could not contest the amount of the final judgment against its insured. Defendant

further argues that the amount of the default judgment was not the proper measure of damages for its insured's injury. Defendant misunderstands the nature of the injury that its insured suffered due to its failure to settle the claim and the constitutional implications. Defendant's insured has a final and enforceable judgment against her in the amount of $2,916,204.00. That judgment has not been set aside and was affirmed on appeal. Thus, it is a certain liability of Winslett. She owes the full amount of the judgment. Had Defendant complied with its duties under the law, as found by the jury, she would not be facing this certain liability. Consequently, it is undisputed that because of Defendant's failure, Winslett suffered damages in the amount of the judgment (less the reduction for her own negligence and the $30,000 policy coverage limits, which Plaintiff did not pursue in this action). Allowing Defendant to argue that the judgment amount was not reasonable would not change the amount of liability that Winslett is exposed to as a result of that judgment. Moreover, it would require a separate mini-trial of the underlying case which has already been litigated once.

As to the constitutional implications, it was reasonably foreseeable to Defendant when it failed to accept the policy limits demand that a lawsuit would be filed and that it was possible for a verdict in excess of the policy limits to be rendered. It was also foreseeable that if a jury found

Defendant's failure to pay the limits to have been unreasonable, then Defendant could be on the hook for any excess verdict, particularly an excess verdict that has been reduced to a final judgment and upheld on appeal.  Thus, while Defendant did not have an opportunity to attack the amount of the underlying judgment, it certainly had an opportunity to avoid it by paying the policy limits demand; and it had an opportunity to contest it after it was issued in the state court action by seeking to have it set aside, which it did, albeit unsuccessfully.

In support of its due process argument, Defendant points to the general principle that due process requires notice and an opportunity to be heard.  Def.'s Br. in Supp. of Mot. for J. as a Matter of Law 12, ECF No. 137-1 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 320 (1950), which concluded that notice by publication on beneficiaries of a common trust fund did not satisfy due process for depriving beneficiaries whose whereabouts are known of their property interests).  Defendant also relies on one Georgia case, which stands for the unremarkable principle that when an insurer receives notice of a lawsuit against its insured but fails to participate in that action, there is no denial of due process based on lack of notice.  *Ga. Farm Bureau Mut. Ins. Co. v. Martin*, 433 S.E.2d 315, 316-17 (Ga. Ct. App. 1993), *rev'd on other grounds*, 444 S.E.2d

739 (Ga. 1994).  But *Martin* is silent on the issues raised in this case.

In addition, Defendant cites a number of non-Georgia cases concluding that the amount of a default judgment against an uninsured motorist is not binding on the uninsured motorist carrier in the insured's subsequent action against the carrier *to recover uninsured motorist benefits under the policy* unless the carrier receives due process, such as an opportunity to intervene in the underlying action between the insured and the uninsured motorist.  *See, e.g., Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210 (N.M. 1996); *Champion Ins. Co. v. Denney*, 555 So. 2d 137, 138 (Ala. 1989); *Nationwide Mut. Ins. Co. v. Webb*, 436 A.2d 465 (Md. 1981).[1]  None of these cases addresses the unique circumstances in this action.  Here, the issue is not whether policy coverage exists for the amount of Guthrie's judgment against Winslett but rather the amount of damages Winslett suffered because Defendant unreasonably rejected Guthrie's policy limits demand.

---

[1] All but one of the twelve non-Georgia cases cited by Defendant on this issue involve the same basic uninsured motorist coverage issue, and the policy in many of the cases stated that an underlying judgment against an uninsured motorist was not conclusive on liability or damages unless the insurer received notice of the underlying action.  The other case, *Topliff v. Chicago Insurance Co.*, 122 P.3d 922 (Wash. Ct. App. 2005), was an action by an attorney against his malpractice insurer that declined coverage under a policy exclusion.  Though the attorney properly served the insurer under the relevant state law by delivering a copy of the summons and complaint to the insurance commissioner, the insurance commissioner did not notify the insurer.  Therefore, the court of appeals affirmed the trial court's decision to vacate the attorney's default judgment against the insurer.

This case presented classic jury issues with no constitutional implications. Defendant simply does not like the result. Verdict disappointment has never been a proper basis for nullifying the findings of a jury, when those findings are supported by the evidence and the law. Defendant is not entitled to judgment as a matter of law. And because the Court cannot conclude that the verdict is against the great weight of the evidence, a second bite at the apple is likewise not warranted. Defendant's motions are denied.

DEFENDANT'S MOTION TO CERTIFY

In addition to its motions attacking the judgment, Defendant asks the Court to certify three questions to the Georgia Supreme Court:

> 1. Under O.C.G.A. § 33-7-15 and the terms of the motor vehicle insurance policy at issue, can GEICO be held liable for an alleged bad faith refusal to accept a pre-suit policy limits demand when GEICO received no notice of the subsequently-filed personal injury lawsuit and a default judgment was entered in that lawsuit without notice to GEICO?
>
> 2. Was the failure of Ms. Winslett to timely provide copies of the summons and complaint served upon her to GEICO the intervening proximate cause of the entry of the default judgment such that GEICO could not be held liable for an alleged bad faith refusal to accept a pre-suit policy limits demand?
>
> 3. In a suit alleging a bad faith refusal to accept a pre-suit policy limits demand, when a default judgment is entered against the insured in the subsequently-filed personal injury lawsuit without the knowledge of the insurer, is the insurer bound by the default judgment and is the measure of damages for the bad faith claim against the insurer the amount of the

default judgment entered in that lawsuit against the insured?

Def.'s Mot. to Certify Questions 1-2, ECF No. 138.

This Court may certify questions of state law to the Georgia Supreme Court if there are questions of Georgia law that "are determinative of the case and there are no clear controlling precedents in the decisions of" the Georgia Supreme Court. O.C.G.A. § 15-2-9(a). The decision whether to certify a question "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Defendant argues that certification of its questions will promote judicial economy. In some cases, certification may certainly "save time, energy, and resources." *Id.* Not here. Defendant did not ask the Court to certify these questions in its summary judgment motion, following the Court's denial of that motion, or following the Court's order explaining the causation and damages principles to be applied at trial—even though it has been clear for months that there are no Georgia cases squarely addressing the precise issues in this unique case. Certification at this point, after the Court has held a trial and a jury has returned a verdict against Defendant, would not serve the interests of judicial economy. Although the Court acknowledges that the Georgia Supreme Court has not addressed the precise issues in this case, the Court is not

22

convinced that certification is warranted at this stage in the litigation.[2]

CONCLUSION

Defendant's motion for judgment as a matter of law, or in the alternative for new trial (ECF No. 137), is denied. Defendant's motion to certify (ECF No. 138) is also denied.

IT IS SO ORDERED, this 13th day of November, 2018.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[2] Of course, on appeal, the Court of Appeals may determine that asking the Georgia Supreme Court for help on these issues is appropriate.